

# UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

**MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE**
**50 WALNUT STREET, P.O. BOX 419**
**NEWARK, NJ 07101-0419**
**(973) 645-6340**

**WILLIAM J. MARTINI**
**JUDGE**

## LETTER OPINION

March 22, 2006

Stephen E. Klausner
Klausner & Hunter
63 East High Street
P.O. Box 1012
Somerville, NJ 08876
*Attorney for Plaintiff Jorge A. Vanegas*

Denise Errico Esmerado
Ruderman & Glickman, P.C.
675 Morris Avenue, Suite 100
Springfield, NJ 07081
*Attorney for Defendant Somerset Hills School*

>  **Re:   Vanegas v. Somerset Hills School**
>  <u>Civil Action No. 05-CV-4310 (WJM)</u>

Dear Counsel:

This matter comes before the Court on Defendant Somerset Hills School's Motion to Dismiss the Fifth and Sixth Counts of Plaintiff Jorge Vanegas' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff opposes the motion. The Court adjudicates this matter on the papers. Fed. R. Civ. P. 78. For the reasons stated below, Defendant's motion is **DENIED**.

## BACKGROUND

Plaintiff was employed by Defendant as a Maintenance Worker from April 1997 until his termination on September 3, 2004. In January 2004 Plaintiff had surgery and was placed on a disability leave of absence; and Defendant was informed of Plaintiff's medical condition. Plaintiff

returned to work on April 19, 2004 with light duty restrictions from his doctor,[1] but he was told by Defendant that he could not return to work until he was fully able to complete his duties with no restrictions.[2]  Plaintiff  returned to work without restrictions on May 17, 2004.  On September 3, 2004, Plaintiff was assigned to paint three classrooms; while completing this assignment, Plaintiff was terminated by Defendant.  On November 9, 2004, Plaintiff filed a charge (the "Charge") with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of age and perceived disability in violation of the Age Discrimination in Employment Act (the "ADEA")[3] and the Americans with Disabilities Act (the "ADA".)[4]  On February 10, 2005, EEOC Area Director, Corrado Gigante, issued a Determination letter (the "EEOC Determination") as to Plaintiff's Charge in which EEOC found that Plaintiff was discriminated against based on his age and disability; EEOC invited the parties to attempt conciliation.  On February 22, 2005, EEOC issued a Notice of Conciliation Failure referring the matter to the EEOC Legal Unit for possible litigation.  No such litigation occurred and, on June 6, 2005, EEOC mailed a Notice of Right to Sue to Plaintiff.  The Right to Sue notice concluded the EEOC's processing of Plaintiff's Charge and noted that the EEOC found reasonable cause that statutory violations may have occurred with respect to some or all of Plaintiff's Charge but could not obtain relief through settlement.

Plaintiff filed his Complaint with the Court on September 1, 2005 seeking injunctive and other relief on Six Counts:

- Count One claims Defendant violated the ADEA by terminating Plaintiff due to his age (Plaintiff was 49 years old) and replacing him with substantially younger man.

- Count Two asserts the Court's supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claim for age discrimination in violation of the New Jersey Law Against Discrimination ("LAD".)[5]

- Count Three is pursuant to the ADA and alleges that Defendant terminated him based on Plaintiff's having a disability, this disability being Plaintiff's medical condition resulting from surgery.

---

[1]  This characterization of Plaintiff's condition upon returning to work on April 19, 2004 was taken from the February 10, 2005 Equal Employment Opportunity Commission Determination letter that Plaintiff attached directly to his Complaint as Exhibit A.

[2]  *Id.*

[3]  29 U.S.C.A. § 621 et seq. (1999 & Supp. 2005.)

[4]  42 U.S.C.A. § 121010 et seq. (2005.)

[5]  N.J.S.A. 10:5-1 et seq. (2002 & Supp. 2005.)

2

- • Count Four once again alleges the Court's supplemental jurisdiction over Plaintiff's LAD claim, this Count relating to discrimination based on handicap.

- • Count Five alleges Defendant violated the ADA by not providing reasonable accommodations to Defendant's known disability.

- • Count Six is again brought under supplemental jurisdiction alleging Defendant did not provide reasonable accommodation for Plaintiff's disability in violation of the LAD.

On October 12, 2005, Defendant filed this Motion to Dismiss the Fifth and Sixth Counts of Plaintiff's Complaint.   Defendant argues that Plaintiff, upon his return to work in April 2004, presented medical documentation from his physician stating that he was unable to work due to a "temporary total disability" and that Plaintiff's status would be re-evaluated at the next appointment which was to be on May 18, 2004. (Def's Brief at 5.)[6]  Pursuant to this total work restriction, Defendant argues, "no accommodation could have been provided to Plaintiff."  (Def's Brief at 7.)

Plaintiff counters that Defendant's brief is predicated on new evidence that should not be considered on a motion to dismiss.  Plaintiff further suggests that if these new documents are considered, Defendant's motion to dismiss must be converted to a motion for summary judgment and that, if so converted, there are fact questions at issue that preclude granting such a motion for summary judgment.  (Pl's Opp. at 3-6.)

**DISCUSSION**

**A.**    **Standard for Dismissal Pursuant to Rule 12(b)(6)**

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).  In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of

---

[6]  Indeed, Defendant argues that in April 2004 Plaintiff presented to Defendant two different physician's releases regarding the extent of his post-surgical disability; Defendant has submitted these releases as exhibits to the October 5, 2005 Certification of Counsel of Denise Errico Esmerado attached with Defendant's Brief in support of the motion to dismiss. The first of these releases, dated April 20, 2004, provided for modified duty restrictions (although Plaintiff supposedly returned to work on April 19, 2004); however, the second release, dated April 21, 2004, specified that Plaintiff could perform no work. (Def's Brief at 7, n.3.)  A third release, dated May 13, 2004, and authorizing Plaintiff's return to full duty without restrictions, was also attached to Defendant's Brief.  These releases, and the propriety of the Court's reviewing them on a motion to dismiss, will be discussed below.

3

public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts that could be proved consistent with the allegations," a court may dismiss a complaint for failure to state a claim. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Zynn v. O'Donnell*, 688 F.2d 940, 941 (3d Cir. 1982). Moreover, in order to survive a 12(b)(6) motion to dismiss, a plaintiff's complaint "need not plead law or match facts to every element of a legal theory." *Weston v. Pennsylvania*, 251 F.3d 420, 429 (3d Cir. 2001). It need only provide a statement sufficient to put opposing party on notice of the claim. *Id.* at 428.

**B.** **Defendant's 12(b)(6) Motion to Dismiss for Failure to State a Claim as to the Fifth and Sixth Counts of the Complaint is DENIED**

Defendant argues that dismissal is appropriate because Plaintiff's April 21, 2004 physician's release indicated that Plaintiff had a temporary total disability, so no reasonable accommodations could have been made. (Def's Brief at 7.) Defendant further contends that, as opposed to Plaintiff's assertion that no reasonable accommodation was offered, Plaintiff was provided full pay through May 2004, and this full pay was adequate accommodation. (Def's Reply at 2.)[7] Defendant has attached to the brief in support of the motion to dismiss a series of releases from Plaintiff's physician, claiming that these releases were provided to Defendant by Plaintiff in support of "his paid leave of absence." (Def's Reply at 5.) Defendant further argues that Plaintiff does not dispute the authenticity of these releases. (*Id.*)

While Plaintiff appears to accept that these releases did indeed issue from his orthopedic doctor, he asserts that he originally presented the April 20, 2004 release authorizing him to return to work with lifting restrictions and that Plaintiff refused to discuss reasonable accommodations pursuant to that release. (Pl's Opp. at 3, 5.) Plaintiff further argues that he was compelled, as a direct result of Defendant's refusal to reasonably accommodate the limited work restrictions, to solicit from his physician the April 21, 2004 release totally limiting Plaintiff from all work until May 2004. (*Id.* at 5.)

_____

[7] Whether any such leave was paid or unpaid appears to be in contention. Defendant's Reply asserts that "Plaintiff was out on disability receiving benefits for the period in question and Defendant supplemented the benefits with additional monies so Plaintiff would receive full salary while absent from work." (Def's Reply at 2.) Plaintiff, however, contends in the Complaint that "Defendant refused to reinstate him or reasonable [sic] accommodate him for disability when he attempted to return to work in April 19, 2004, keeping him on unpaid leave until May 17, 2004 . . ." (Compl. at 11.)

## I.      Standards Under the ADA and LAD

In order for a Plaintiff to establish a prima facie case of discrimination under the ADA, "the Plaintiff must show (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination."  *Taylor v. Phoenixville School Dist.*, 174 F.3d 142, 151 (3d Cir. 1999). Discrimination under the ADA includes failing to make "'reasonable accommodations to the known physical or mental limitations of the individual unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer].'" *Id.* (quoting 42 U.S.C. § 12112(b)(5)(A).)  "A 'qualified individual with a disability' is defined by the ADA as a person "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* (quoting 42 U.S.C. § 12111(8).)  Finally, a "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." *Id.* (quoting 42 U.S.C. § 12102(2).)

Likewise, under the LAD, "'[g]enerally, a *prima facie* case of failure to accommodate requires proof that (1) the Plaintiff had a LAD handicap; (2) was qualified to perform the essential functions of the job, with or without accommodation; and (3) suffered an adverse employment action because of the handicap.'" *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 150 (3d Cir. 2004) (quoting *Bosshard v. Hackensack Univ. Med. Ctr.*, 783 A.2d 731, 739 (N.J. Super. Ct. App. Div. 2001).)  "Reasonable accommodation" under the LAD is interpreted in very similar terms to the ADA. *Bosshard*, 783 A.2d at 739 ("[A]n employer's duty to accommodate extends only so far as necessary to allow a disabled employee to perform the essential functions of his job.") (internal citations omitted.)  However, "while the ADA applies to employees who, with or without reasonable accommodation, can *perform* the essential functions of the employment position that such individual holds or desires . . . NJLAD protects only an employee who can *presently perform* the essential functions of his job with or without the reasonable accommodation." *Conoshenti*, 364 F3d. at 151 (internal citations omitted.)  This exception means that the LAD thus requires "that the handicapped employee be able to perform the essential functions of his job *during* the application of the reasonable accommodation – that is, *at the same time* that the reasonable accommodation is being implemented." *Id.*

## ii.      Admissibility of Physician's Releases

Plaintiff argues in his Opposition Brief that Defendant's submission of the physician's releases is improper or, in the alternative, should act to convert this motion to dismiss into a motion for summary judgment.  On a rule 12(b)(6) motion if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material

made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b); *see also generally Rose v. Bartle*, 871 F.2d 331 (3d Cir. 1989).

However, a document does not have to be physically attached to a complaint for the Court to rely on it in considering a motion to dismiss. As outlined by the Third Circuit, when a document attached to the motion to dismiss, but not submitted with the complaint, is undisputed and authentic and the basis for the plaintiff's claims, a court may consider such a document. *Pension Benefit*, 998 F.2d at 1196. Likewise, a document attached by a defendant to a motion to dismiss is considered part of the pleading if it is referred to in the complaint and is central to the plaintiff's claims. *See Pryor v. NCAA*, 288 F.3d 548, 559-60 (3d Cir. 2002). Under either language, the physician's releases may be considered by the Court on this motion to dismiss.

The physician's authorization for Plaintiff to return to work is both central to, and referenced in, Plaintiff's Complaint. Plaintiff's Third, Fifth and Sixth Counts each rely on Defendant's having been informed of Plaintiff's medical condition. (Compl. at 6, 9-11.) While not spelling out with crystal clarity that Defendant was provided the physician's releases as notification of Plaintiff's disability, the exact nature of this information becomes clear when reviewing the EEOC Determination that Plaintiff physically attached to the Complaint.[8] Indeed the EEOC Determination states that Defendant was "informed of his medical condition [and Plaintiff's] doctor released him to return to work with light duty restrictions." (EEOC Determination at 1.) Plaintiff's opposition brief further details his process in obtaining the two releases. (Pl's Opp. at 5). Based on the language of the Complaint and the EEOC Determination, it becomes clear that any assessment by Plaintiff's physician as to Plaintiff's medical condition, and the nature the physician's releases, are integral to the Complaint. Finally, the authenticity of these documents does not appear to be in dispute. Rather, Plaintiff appears to grant that these documents are true and were drafted by his physician, writing in his opposition brief that Defendant's arguments are "based upon medical forms prepared by Vanegas' orthopedic doctor." (Pl's Reply at 3.) Therefore, Defendant may rightly refer to the physician's releases in the motion to dismiss, and the Court may review them without converting this motion to dismiss into a motion for summary judgment.

### iii.    Sufficiency of Counts Five and Six

Although the physician's releases may be reviewed on this motion to dismiss, their mere admission does not prove to be the panacea Defendant asserts. Defendant essentially argues that the April 21, 2004 physician's release is evidence that Plaintiff was unable to perform any work

---

[8] Defendant argues rightly that the EEOC determination is not binding upon this Court, however it was attached to the Complaint and is certainly evidence that may be considered in evaluating this motion to dismiss. *Pension Benefit*, 998 F.2d at 1196. Moreover, while not binding upon this Court, EEOC determinations are generally admissible at subsequent trials absent a showing that a specific finding is particularly untrustworthy. *See Abrams v. Lightolier, Inc.*, 841 F.Supp. 584, 592 (D.N.J. 1994); *Hernandez v. Region Nine Housing Corp.*, 684 A.2d 1385, 1390 (N.J. 1996). Furthermore the determination whether to admit or deny evidence of EEOC determinations is firmly within a trial court's discretion. *See Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1345 (3d Cir. 2002).

whatsoever including the essential functions of his employment position; therefore Plaintiff did not have a qualified disability under the ADA, nor could any reasonable accommodation have been made for Plaintiff during that time when he was completely unable to work.

However, Plaintiff's claims in Counts Five and Six do not rely solely on the April 21, 2004 release; rather, they are predicated on the entirety of his interactions with Defendant regarding his disability.[9]  To this end, Plaintiff asserts that he first presented Defendant with the April 20, 2004 release that authorized him to return to work with modified duty restrictions.  He contends that Defendant's supposed refusal to accommodate the modified duty restrictions in Plaintiff's April 20, 2004 physician's release caused Plaintiff to then obtain the more restrictive April 21, 2004 release. (Pl's Reply at 5.)  Furthermore, Plaintiff argues that discovery will provide him the opportunity to obtain his medical file from his physician and review the underpinnings of the releases.  (*Id.*)  If Plaintiff's contention regarding the two releases is true, it adds weight to his claims in Counts Five and Six.

Moreover, the Court finds EEOC's determination that Plaintiff's Charge was credible to be compelling.  Indeed, EEOC's investigation found that an "analysis of the evidence as a whole" including "credible testimonial evidence confirm[ing] that reasonable accommodations did exist" led it to determine "that the evidence obtained during the investigation establishe[d] a violation of the statute, and that the evidence as a whole indicates that [Plaintiff] was discriminated against." (EEOC Determination at 2.)  Based on the foregoing, the Court finds that Counts Five and Six of the Complaint are sufficient to survive this motion to dismiss.

**CONCLUSION**

In light of Plaintiff's Complaint and the other evidence the Court is entitled to consider on this motion to dismiss, it is clear that viewing the allegations in the Complaint in the light most favorable to Plaintiff, there may be a set of facts consistent with the allegations in Counts Five and Six upon which relief could be granted.  Therefore, Defendant's Motion to Dismiss the Fifth and Sixth Counts of the Complaint must be **DENIED**.

An appropriate Order accompanies this Opinion.

s/ William J. Martini

**William J. Martini, U.S.D.J.**

cc:   The Hon. Ronald J. Hedges, U.S.M.J.

---

[9]  While the Court at this time need not evaluate Counts Five and Six through the lens of the April 21, 2004 release alone, such an analysis would not require dismissal of both Counts. While such a review might cast doubt on the success of Count Six's LAD claims, it would not be determinative as to Count Five's ADA claims.  *See, e.g., Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d at 151.

7